UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

EED HOLDINGS,

                Plaintiff,

  - against -

PALMER JOHNSON ACQUISITION CORP.
and ANDREW J. McKELVEY,

                Defendants.

------------------------------------------X

04 Civ. 0505 (RWS)

O P I N I O N

A P P E A R A N C E S:

    FRIEDMAN, WITTENSTEIN & HOCHMAN
    Attorneys for Plaintiff
    101 East 52nd Street
    New York, NY 10022
    By:  IVAN O. KLINE, ESQ.
         JOHN E. GREENE, ESQ.
         Of Counsel

    LEVI LUBARSKY & FEIGENBAUM
    Attorneys for Defendants
    845 Third Avenue, 21st Floor
    New York, NY 10022
    By:  STEVEN B. FEIGENBAUM, ESQ.
         J. KELLEY NEVLING, JR., ESQ.
         Of Counsel





Sweet, D.J.,

Defendant Andrew J. McKelvey ("McKelvey") has moved under Rule 12(b)(6) and Rule 9(b), Fed. R. Civ. P., to dismiss certain of the claims against him in the amended complaint of plaintiff EED Holdings alleging that the corporate veil shielding defendant Palmer Johnson Acquisition Corp. ("PJAC") should be pierced and that McKelvey committed fraud. For the reasons set forth below, the motion is granted, and the allegations stricken.

**Prior Proceedings**

The initial filing of the complaint by EED and the previous motion by McKelvey to dismiss it are set forth in the October 20, 2004 opinion of the Court, familiarity with which is assumed. See EED Holdings v. Palmer Johnson Acquisition Corp., No. 04 Civ. 0505 (RWS), 2004 WL 2348093 (S.D.N.Y. Oct. 20, 2004) (the "October 20 Opinion"). The October 20 Opinion granted McKelvey's motion in part and denied it in part.

In the October 20 Opinion, this Court held that with respect to McKelvey, EED had failed to state a negligent misrepresentation claim or a basis for piercing the corporate veil, but that EED had stated a fraud claim against him. It held that two of the specific representations referred to in the complaint were not actionable and denied PJAC's motion to dismiss or transfer.

EED filed its amended complaint on November 8, 2004. The amended complaint repleaded the piercing the corporate veil claim against McKelvey, amended the fraud claim, and removed reference to the two representations which the Court held to be non-actionable. The amended complaint also retains the breach of contract claim against PJAC, which is not at issue on the present motion.

The October 20 Opinion upheld the fraud claim against McKelvey based on his alleged statement that PJAC "had the capability and wherewithal to properly construct the yacht . . . in a timely manner." (Compl. ¶ 14.)

The instant motion was heard and marked fully submitted on February 9, 2005.

**The Additional Allegations**

The amended complaint added the following allegations:

> 15. In Spring 2001 Goldman met with McKelvey at the New York Yacht Club in Manhattan, and discussed the type of yacht he wished to have constructed. McKelvey spoke at length about the attributes of PJI in order to convince Goldman to contract with PJI for the yacht. Among other things, McKelvey stated to Goldman that PJI had the capability and wherewithal to properly construct the yacht sought by Goldman in a timely manner. McKelvey also assured Goldman -- who was aware of McKelvey's enormous personal wealth -- in words or in substance that he would personally take all necessary steps to insure that PJI maintained its wherewithal.

> 17. In order to further induce EED to enter into an agreement with PJI, McKelvey agreed to have PJAC guaranty PJI's obligations. Upon information and belief, McKelvey knew at that time that, because PJAC was itself undercapitalized, it would not have sufficient assets to meet its obligations under such guaranty if called upon to do so.

(Am. Compl. ¶¶ 15, 17.)

**The Facts As Alleged**

The following facts are drawn from the amended complaint. All well-pleaded allegations are accepted as true for the purpose of this motion. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). The following statements do not constitute findings of the Court.

EED is a company incorporated in the Cayman Islands, and is a citizen or subject of the United Kingdom. Its chief asset is a Cayman Islands flag vessel which has no fixed location. (See Am. Compl. ¶ 4.)

PJAC is a Delaware corporation with its principal place of business in Wisconsin, formed by McKelvey to serve as a holding company for several corporations involved with the construction, repair, and servicing of yachts. (See id.)

3

McKelvey is a citizen of the State of New York, the owner of the entirety of PJAC, and according to EED "one of the wealthiest individuals in the United States." (Id. ¶ 6.)

In 2000, McKelvey formed PJAC, and on September 29, 2000 PJAC acquired 100 percent of the stock of Palmer Johnson, Inc. ("PJI") and two other Palmer Johnson companies, as well as certain related assets owned by the selling parties (the "PJAC Acquisition"). According to EED, for some time prior to the PJAC Acquisition, the Palmer Johnson companies had experienced considerable financial and operating difficulties. (See id. ¶¶ 7, 8.)

In Spring 2001, Marc Goldman ("Goldman") met with McKelvey at the New York Yacht Club in Manhattan, and discussed the type of yacht Goldman wished to have constructed. McKelvey spoke at length about the attributes of PJI in order to convince Goldman to contract with PJI for the yacht. Among other things, McKelvey stated to Goldman that PJI had the capability and wherewithal to properly construct the yacht sought by Goldman in a timely manner. McKelvey also assured Goldman, who was aware of McKelvey's enormous personal wealth, in words or in substance that he would personally take all necessary steps to insure that PJI maintained its wherewithal. (See id. ¶ 15.)

In June 2001, Goldman, as sole owner, caused EED to be formed for the purpose of contracting for and owning a yacht that

4

Goldman wished to have constructed.  Goldman wanted to have the yacht constructed in the United States, and EED considered several potential yacht construction companies.  (See id. ¶ 14.)

In order to further induce EED to enter into an agreement with PJI, McKelvey agreed to have PJAC guaranty PJI's obligations.  Upon information and belief, McKelvey knew at that time that because PJAC was itself undercapitalized, it would not have sufficient assets to meet its obligations under such guaranty if called upon to do so.  (See id. ¶ 17.)

Thereafter, PJI failed to perform the Construction Agreement.  (See id. ¶¶ 33, 34, 38, 40.)

According to EED, PJI suffered operating losses in 2002 (see id. ¶ 24), and by February 2003, bankruptcy seemed imminent.  (See id. ¶ 25).  The contractual arrangements were altered so that Goldman through MG Vessel Construction, LLC ("MG Vessel") took title to the yacht under construction, and PJI undertook to complete the yacht on a time and materials basis.  (See id. ¶¶ 26, 29.)  PJI failed to perform and PJAC refused to pay EED on its guaranty.  (See id. ¶¶ 33, 34, 35, 36, 37.)  PJI subsequently was granted protection from its creditors pursuant to Chapter 11 of the U.S. Bankruptcy Code.  (See id. ¶ 28.)

This action followed.

## Discussion

### The Rule 12(b)(6) Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000).

### The Rule 9(b) Standard

Rule 9(b), Fed. R. Civ. P., provides as follows: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). The Second Circuit "has read

6

Rule 9(b) to require that a complaint [alleging fraud] '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

**The Veil Piercing Claim Is Dismissed**

McKelvey has challenged the adequacy of the veil piercing claim against him. As stated in the October 20 Opinion, the Second Circuit has stated that veil piercing is a narrow exception to the doctrine of limited liability for corporate entities, and that courts should permit veil-piercing only under "extraordinary circumstances." Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996).

Under New York law, a party seeking to pierce the corporate veil must generally show that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Matter of Morris v. New York State Dep't of Taxation and Fin., 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-11, 623 N.E.2d 1157, 1160-61 (1993). The New York Court of Appeals has held that both of these elements must be established in order to justify application of the veil-piercing doctrine. See TNS Holdings, Inc.

7

v. MKI Secs. Corp., 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 893, 703 N.E.2d 749, 751 (1998) ("Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance.") (citing Matter of Morris, 82 N.Y.2d at 140-41, 603 N.Y.S.2d at 810, 623 N.E.2d at 1160).

To avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim. See, e.g., JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., 295 F. Supp. 2d 366, 379 (S.D.N.Y. 2003) (stating that both elements of a veil-piercing claim must be alleged); Zinaman v. USTS New York, Inc., 798 F. Supp. 128, 131 (S.D.N.Y. 1992) (same).

In this district, veil-piercing claims are generally subject to the pleading requirements imposed by Fed. R. Civ. P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." See Rolls-Royce Motor Cars, Inc. v. Schudroff, BBS, 929 F. Supp. 117, 122 (S.D.N.Y. 1996). However, where a veil-piercing claim is based on allegations of fraud, "the heightened pleading standard of Rule 9(b) is the lens through which those allegation[s] must be examined." In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003).

EED has argued that its claim is not premised on fraud. However, the crux of its amended claim is that McKelvey agreed to have PJAC guaranty PJI's obligation in order to further induce EED to contract with PJI, even though "McKelvey knew at that time that, because PJAC was itself undercapitalized, it would not have sufficient assets to meet its obligations under such guaranty if called upon to do so." (Am. Compl. ¶ 17.) That allegation sounds in fraudulent inducement and subjects EED's amended veil-piercing claim to the particularity requirements of Rule 9(b), which necessitate the pleading of "particularized 'facts that give rise to a strong inference' that defendant[] acted with fraudulent intent." Lesavoy v. Lane, 304 F. Supp. 2d 520, 530 (S.D.N.Y. 2004) (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)). There are, however, no allegations in the amended complaint which lead to the inference of fraudulent intent on the part of McKelvey.

Moreover, EED's veil-piercing allegations are conclusory and, therefore, fail to satisfy even the more lenient Rule 8(a) pleading requirements. In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d at 426 (stating that "purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard [under Rule 8(a)].")

The parties agree that the amended veil-piercing claim is based on the allegations contained in paragraphs 17 and 52 of the amended complaint. The allegations in paragraph 17 (described above) are substantively identical to the allegation in the original complaint that "to further induce EED to enter into the Construction Agreement with PJI, PJAC executed a Parent Guaranty dated August 3, 2003." (Compl. ¶ 19.) Paragraph 52 of the amended complaint alleges that "McKelvey's domination of and undercapitalization of PJAC has caused a wrong to be committed against EED, which relied upon the Guaranty, and has caused injury to EED as, upon information and belief, PJAC is unable to comply with its obligations under the Guaranty." (Am Compl. ¶ 52.) That allegation is identical to the original allegation that "[f]rom the time of the PJAC Acquisition, neither PJAC nor PJI was adequately capitalized to properly engage in their business" and that "McKelvey knowingly undercapitalized these entities to be able to avoid obligations that would arise from their operations, including the obligations to EED under the Construction Agreement and the Guaranty." (Compl. ¶ 41.) The new language -- that PJAC's lack of capital "has caused a wrong to be committed against EED" -- adds no new facts and is conclusory. It is no cure for the defects in the original complaint.

The crux of EED's original and amended complaint is that PJI failed to construct EED's yacht in accordance with the specifications and warranties contained in the parties' contract,

10

and that EED has had to incur the cost of having others repair those defects. As this Court has already found in the October 20 Opinion, neither PJAC nor McKelvey had anything to do with that alleged injury, since neither had anything to do with the construction of the yacht. No nexus has been established between McKelvey's alleged undercapitalization of PJAC and the harm resulting from the alleged failure of PJI to perform its obligations. It follows that EED's veil-piercing claim still "fails to establish that McKelvey's domination of PJAC was the means by which wrong was done to EED." EED Holdings (October 20 Opinion), 2004 WL 2348093, at *7. That result, compelled by applicable authorities, does not change by the inclusion of a single conclusory allegation in the amended complaint. See, e.g., TNS Holdings, 92 N.Y.2d 335, 340, 680 N.Y.S.2d 891, 893, 703 N.E.2d 749, 751 (1998) (dismissing alter ego claim for lack of "showing that through its domination MKI misused the corporate form for its personal ends so as to commit a fraud or wrongdoing or avoid any of its obligations"); Matter of Morris, 82 N.Y.2d 135, 143, 603 N.Y.S.2d 807, 811, 623 N.E.2d 1157, 1161 (1993) (dismissing petition to pierce corporate veil, citing lack of evidence "that petitioner, through his domination, misused the corporate form for his personal ends so as to commit a wrong or injustice on the taxing authorities").

The cases cited by EED exemplify the use of domination to cause the injury. See, e.g., JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. & Trade Servs., Inc., 295 F.

Supp. 2d 366, 378 (S.D.N.Y. 2003) (holding that plaintiff had alleged a basis for piercing the corporate veil where the complaint alleged that two defendants "exercised . . . complete domination to abuse the corporate form in a manner that resulted in injury to the plaintiff, namely by using assets for personal rather than corporate purposes and by placing assets beyond the reach of creditors"); District Council No. 9 v. APC Painting, Inc., 272 F. Supp. 2d 229, 241 (S.D.N.Y. 2003) (holding that the plaintiff had stated claim of piercing the corporate veil where it "allege[d] that [defendant] ha[d] used his companies in an attempt to avoid the obligations that were imposed by [certain] arbitration awards."); Rolls-Royce Motor Cars, Inc. v. Schudroff, 929 F. Supp. 117, 122 (S.D.N.Y. 1996) (holding that the plaintiff had stated a claim of piercing the corporate veil where it was alleged that the defendants had used their control over corporate entities to hide assets from creditors). It is just this causative element -- i.e., the use of domination to cause the injury -- which is lacking in the amended complaint and which results in the dismissal of the corporate veil-piercing allegation.

**The Fraud Allegation Is Dismissed**

EED has replaced the dismissed allegation that McKelvey was "personally 'committed to PJI'" with the allegation that McKelvey "assured Goldman -- who was aware of McKelvey's enormous personal wealth -- in words or in substance that he would personal-

ly take all necessary steps to insure that PJI maintained its wherewithal." (Am. Compl. ¶ 15.) This new alleged misstatement is not actionable for the reason that it does not plead the fraudulent statements with the particularity required by Rule 9(b), and it pleads its central element, McKelvey's intention not to do what he said he would, on information and belief without stating any facts to establish that McKelvey's expressed intent was false at the time it was expressed.

Although McKelvey's alleged statement as to the present state of PJI's finances are actionable, this is not the case for an allegation concerning a statement to take unspecified steps in the future, particularly where that allegation is not accompanied by additional allegations that the statement was false at the time it was made. By stating in its brief that McKelvey's alleged misstatement amounted to a promise to insure that PJI had the financial wherewithal to properly perform its contractual obligations, EED sought to convert the statement into a promise to ensure that the yacht construction contract would be performed in accordance with its terms. However, under New York law, a fraud cause of action generally does not arise where the alleged fraud merely relates to a breach of contract. See, e.g., Salvador v. Uncle Sam's Auctions & Realty, Inc. ex rel. Passonno, 307 A.D.2d 609, 611, 763 N.Y.S.2d 360, 362 (3d Dep't 2003); River Glen Assocs., Ltd. v. Merrill Lynch Credit Corp., 295 A.D.2d 274, 275,

13

743 N.Y.S.2d 870, 871 (1st Dep't 2002); <u>Bazerman v. Edwards</u>, 295 A.D.2d 115, 742 N.Y.S.2d 822 (1st Dep't 2002).

Although EED originally quoted McKelvey's exact words, the amended complaint describes his remarks in words "or in substance." That qualifying language indicates that EED has failed to allege the content of the fraudulent statement with requisite particularity. <u>See</u>, <u>e.g.</u>, <u>Mills</u>, 12 F.3d at 1175 (stating that in order to satisfy Rule 9(b), plaintiff must "specify the statements that the plaintiff contends were fraudulent").

In its effort to meet Rule 9(b)'s scienter requirement, EED alleges on information and belief that "McKelvey did not at the time of his meeting with Goldman intend to take all steps necessary to insure that PJI would maintain the wherewithal to properly perform under a yacht construction agreement." (Am. Compl. ¶ 16.) But "[w]here pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud . . . ." <u>Wexner v. First Manhattan Co.</u>, 902 F.2d 169, 172 (2d Cir. 1990). It is well established that "fraudulent intent is not demonstrated by mere evidence of non-performance of a promise." <u>Murray v. Xerox Corp.</u>, 811 F.2d 118, 122 (2d Cir. 1987); <u>see</u> <u>also</u> <u>Powers v. British Vita, P.L.C.</u>, 57 F.3d 176, 185 (2d Cir. 1995) (stating that "'[t]he mere non-performance of promises is insufficient to create an inference of fraudulent intent'") (quoting <u>Enzo</u>

14

Biochem, Inc. v. Johnson & Johnson, No. 87 Civ. 6125 (KMW), 1992 WL 309613 at *11-12 (S.D.N.Y. Oct. 15, 1992)).

EED argues that a strong inference can be drawn from the amended complaint's allegations that before the spring 2001 meeting, PJI was undercapitalized and lacked the wherewithal to perform under a yacht construction contract, and that McKelvey then knew as much. But those allegations only suggest that PJI needed more capital, not that McKelvey did not intend to provide it. EED also relies on allegations about post-meeting events, including that PJI lost money in 2001 and 2002 (see Am. Compl. ¶¶ 12, 24.); that within months after the yacht construction agreement was signed, PJI was unable to properly perform (see id. ¶ 23); and that by early 2003, PJI was unable altogether to perform. (See id. ¶ 23). Such allegations concerning after-the-fact events are immaterial to McKelvey's state of mind in the spring of 2001. EED has alleged nothing that supports any inference that McKelvey's intentions at that time were inconsistent with what he then said.

## Conclusion

For the foregoing reasons, the veil-piercing and fraud claims in the amended complaint are dismissed with prejudice as to McKelvey.

It is so ordered.

New York, NY
May  19 , 2005

ROBERT W. SWEET
U.S.D.J.